**SOUTHERN PACIFIC TRANSPORT COMPANY OF TEXAS AND LOUISIANA and Southwestern Transportation Company, Plaintiffs,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants.**

**CA–3–5395–B, CA–3–5396–D.**

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 29, 1972.

Damon R. Capps, Midland, Tex., Donald L. Case of Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for plaintiff.

Phillip Robinson, Austin, Tex., Joseph M. Stuhl, Dallas, Tex., for Central Freight Lines.

Crawford C. Martin, Atty. Gen., Rex H. White, Jr., Asst. Atty. Gen., Austin, Tex., for Railroad Commission of Tex.

Eldon B. Mahon, U. S. Atty., Charles D. Cabaniss, Asst. U. S. Atty., Dallas, Tex., Walker B. Comegys, Acting Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Fritz R. Kahn, Gen. Counsel, Manny H. Smith, Atty., I. C. C., Washington, D. C., for defendants.

Before GOLDBERG, Circuit Judge, and HUGHES and HILL, District Judges.

## OPINION and JUDGMENT

### PER CURIAM:

The Southern Pacific Transport Company and the Southwestern Transportation Company filed two actions against the United States and the Interstate Commerce Commission seeking to enjoin and to set aside two orders issued by the

Interstate Commerce Commission. The orders in question are certificates of registration granted to Central Freight Lines and Red Arrow Freight Lines. The Interstate Commerce Commission has concluded all administrative action and has issued final orders for the certificates.

The Interstate Commerce Commission issued the orders pursuant to procedures provided for in Section 206(a)(6) of the Interstate Commerce Act, 49 U.S.C. § 306(a)(6) (1970), and the regulations thereunder, 49 C.F.R. § 1100.245. Section 206(a)(6) provides that the Interstate Commerce Commission (ICC) may issue a certificate of registration for interstate service to single-state carriers without the requisite certificate of public convenience and necessity from the ICC, provided that an authorized state agency has duly considered the issue of public convenience and necessity and has made favorable findings.

The plaintiffs invoked the jurisdiction of this three-judge panel pursuant to the United States Code sections 1336, 1398, 2284 and 2321–2325; Sections 17(9) and 205(g) and (h) of the Interstate Commerce Act, 49 U.S.C. §§ 17(9), 305(g) and (h); the Fifth and Fourteenth Amendments of the United States Constitution; the Commerce Clause of the United States Constitution; and Sections 551 et seq. and 701–706 of the Administrative Procedure Act, 5 U.S.C. § 551 et seq., 701–706 (1970). No party challenges the jurisdiction of this Court to decide the issues presented in the complaint. This Court granted the motions to intervene as defendants of Central, Red Arrow and the Railroad Commission of Texas.

By a pre-trial order the two actions filed by the plaintiffs in this district were consolidated. The parties stipulated in the order that the decision and resulting orders of the Interstate Commerce Commission are supported by substantial evidence.

The issue presented is whether the 1962 amendment to the Interstate Commerce Act, 49 U.S.C. Section 306(a)(6), authorizing "single state" interstate applications to be initally determined by state agencies, such as the Railroad Commission of Texas, violate the Commerce Clause of the Constitution, the National Transportation Policy or the Interstate Commerce Act. We hold that such amendment does not violate the Commerce Clause of the Constitution, the National Transportation Policy or the Interstate Commerce Act and that the orders of the Commission should be affirmed. ·

## FACTUAL BACKGROUND

Central Freight Lines and Red Arrow Freight Lines filed with the Railroad Commission of Texas applications for certificates of public convenience and necessity granting them motor carrier routes in East Texas. Central and Red Arrow sought authority to operate in intrastate commerce pursuant to the provisions of Article 911b of the Vernon's Texas Revised Civil Statutes. In addition, they served notice that they intended to engage in interstate commerce and requested that the Railroad Commission make findings of public convenience and necessity for service in interstate commerce pursuant to Section 206(a)(6) of the Interstate Commerce Act.

The plaintiffs in the present action filed opposition to the applications of Central and Red Arrow before the Railroad Commission. After considering the recommendations of the hearing examiners on the applications, the Railroad Commission adopted the examiners' report and issued a final order authorizing Central and Red Arrow to transport goods in intrastate commerce. The final order of the Railroad Commission granted Central and Red Arrow each a certificate of public convenience and necessity for service in intrastate commerce, and pursuant to section 206(a)(6), the Railroad Commission stated that it had duly considered the issue of service in interstate commerce. The Railroad Commission found that public convenience and necessity required that the Interstate Commerce Commission approve the applications of Central and Red Arrow to

engage in interstate commerce within the limits of the intrastate operations which the Railroad Commission had authorized.

Following the issuance of the order and recommendation of the Railroad Commission, Central and Red Arrow filed with the Interstate Commerce Commission applications for certificates of registration in accordance with section 206(a)(6). Central and Red Arrow are single-state carriers and, therefore, came within the purview of the section 206(a)(6) exemption. The plaintiffs in the present action filed before the Interstate Commerce Commission opposing motions and briefs against the issuance of the certificates. The ICC reviewed the findings of the Railroad Commission and granted the certificates of registration in their entirety.[1]

### APPLICABLE LAW & LEGISLATIVE HISTORY

Section 206 of the Interstate Commerce Act provides generally that a motor carrier cannot maintain operations in interstate commerce without a certificate of public convenience and necessity issued by the Interstate Commerce Commission. There is, however, an exception to this rule which applies to "single-state" carriers. The single state carrier can opt for an exemption from securing a certificate of public convenience and necessity, and secure from the ICC a certificate of registration if it satisfies the procedures outlined in Section 206(a)(6).

Section 206(a)(6) provides in pertinent part as follows:

". . . no certificate of public convenience and necessity under this chapter shall be required for operations in interstate or foreign commerce by a common carrier by motor vehicle operating solely within a single State . . . if such carrier has obtained from the commission of such State authorized to issue such certificates, a certificate of public convenience and necessity authorizing motor vehicle common carrier operations in intrastate commerce . . . and such certificate recites that it was issued after notice to interested persons . . . of the filing of the application and of the desire of the applicant also to engage in . . . interstate . . . commerce within the limits of the intrastate authority granted . . . . that the State commission has duly considered the question of the proposed interstate and foreign operations and has found that public con-

---

1. I.C.C. Order Nos. MC–2226 & MC–30867 (October 15, 1971). In the Final Order the Commission made the following findings:

". . . That (1) in its orders of May 4, 1971, the Railroad Commission of Texas found that public convenience and necessity require the operations described therein in intrastate commerce and at the same time found that the present and future public convenience and necessity require corresponding operations by applicants in interstate and foreign commerce; (2) that the record amply sustains such findings and the need for additional motor carrier service; (3) that the basic procedure of publication, notice, and hearing which resulted in issuance of the underlying State certificates and the dual findings of public convenience and necessity are controlling in determination of whether the certificates meet the requirements of Section 206(a)(6) of the Act; (4) that the procedures followed by the Railroad Commission of Texas in reaching

its conclusions and findings are in accordance with the requirements of Section 206(a)(6) of the Act, as amended (Dugan Extension—Certificate of Registration, 99 M.C.C. 557), and Certificate Nos. 2600 and 2627 in all respects meet the statutory requirements; (5) that the orders of the Railroad Commission of Texas dated May 4, 1971, are valid and outstanding until and unless revoked or cancelled by the Railroad Commission of Texas or until set aside by the Courts, to which an appeal has been taken for the purpose of setting aside such orders; (6) that the applications were filed in substantial compliance with the applicable law and dismissal or denial thereof is not warranted; and (7) that petitioners failed to set forth material facts or arguments of substance which were not considered by the Railroad Commission of Texas;"
*Id.* at p. 2.

venience and necessity require that the carrier authorized to engage in intrastate operations also be authorized to engage in operations in interstate and foreign commerce within limits which do not exceed the scope of the intrastate operations authorized to be conducted.

The termination, restriction in scope, or suspension of the intrastate certificate shall on the 180th day thereafter terminate or similarly restrict the right to engage in interstate or foreign commerce unless the intrastate certificate shall have been renewed, reissued, or reinstated, or the restrictions removed within said one hundred eighty-day period.

. . . any party in interest, who or which opposed in the State commission proceeding the authorization of operations in interstate or foreign commerce, may petition the Commission for reconsideration of the decision of the State commission authorizing operations in interstate or foreign commerce, and upon such reconsideration upon the record made before the State commission, the Commission may affirm, reverse, or modify the decision of the State commission, but only with respect to the authorization of operations in interstate and foreign commerce."

Thus under Section 206(a)(6) the Interstate Commerce Commission can issue certificates of registration provided that (1) the State commission is one authorized to issue certificates of public convenience and necessity in intrastate commerce; (2) the State commission has duly considered the question of the proposed interstate operations; and (3) the State commission has found that public convenience and necessity require authorization to engage in intrastate and interstate commerce.

Congress approved the present form of Section 206(a)(6) of the Interstate Commerce Act in October 1962. Prior to the passage of the amendment, the existing law enabled the single-state motor carriers to engage in interstate com-

merce without securing a certificate of public convenience and necessity from the Interstate Commerce Commission. The prior law only required the carrier to secure a certificate of public convenience and necessity for intrastate operations from the appropriate state commission. The carrier received the right to engage in interstate commerce by filing the State certificate with the ICC which automatically granted the interstate certificate. Under the old law, the Interstate Commerce Commission had no discretion in accepting and approving the application.

The House Report on the proposed amendment to the Motor Carrier Act recited that the need for the change arose from the abuse of the exemption afforded by Section 206(a)(1) to single state carriers. Under the old law, "rights to engage in interstate and foreign commerce come into being without approval of the Interstate Commerce Commission." 1962 U.S.Code Cong. & Adm. News p. 3167. The House Report declared that "[e]ntry of motor carriers into interstate transportation should be based on affirmative findings by a regulatory board or commission that a public need exists for such interstate services." 1962 U.S.Code Cong. & Adm.News p. 3168. The act as passed by Congress provided that an authorized State commission make findings on the need for interstate service and that the ICC exercise review of the findings before issuing a certificate of registration.

ANALYSIS AND AUTHORITIES

The plaintiffs in this case, Southern Pacific Transport Company and Southwestern Transportation Company, contend first that the Railroad Commission of Texas cannot "duly consider" issues of public convenience and necessity relating to interstate and foreign commerce. The plaintiffs do not in this action attack the right of the Railroad Commission to determine public convenience and necessity as it relates to intrastate commerce but only its authority to consider such convenience and necessity as it relates to interstate commerce.

To the extent that plaintiffs appear to contend that the Railroad Commission of Texas is without jurisdiction under the laws of the State of Texas to participate in the procedures authorized by Section 206(a)(6) that issue is now pending before the state courts of Texas and is not before this Court under its pre-trial order of April 18, 1972.

Section 206(a)(6) established procedure for federal and state cooperation in determination of the public necessity for proposed motor common carrier services in interstate or foreign commerce "which do not exceed the scope of the intrastate operations authorized to be conducted." Such coordinated federal-state action is not a novel proposition. The Section 206(a)(6) procedure for determination of the issue of need for proposed interstate service is similar to the procedure prescribed in Section 205(a) of the Interstate Commerce Act [2] for determination of applications for motor common carrier service within three states or less. This section provides that the appropriate proceedings for determining public convenience and necessity shall be referred to a joint board composed of one member from each state within which operations are proposed. The recommendations of the Joint Board are filed with the ICC and made subject to the same rules as a recommendation by a hearing officer of the Commission.

■ Clearly there is no constitutional prohibition against federal and state cooperation in the field of regulating interstate commerce. In Prudential Insurance Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946) the Supreme Court rejected a challenge to the constitutionality of coordinated federal-state action, declaring:

". . . Such a conception would reduce the joint exercise of power by Congress and the states to achieve common ends in the regulation of our society below the effective range of either power separately exerted, with-

out basis in specific constitutional limitation or otherwise than in the division itself. We know of no grounding, in either constitutional experience or spirit, for such a restriction. For great reasons of policy and history not now necessary to restate these great powers were separated. They were not forbidden to cooperate or by doing so to achieve legislative consequences, particularly in the great fields of regulating commerce and taxation, which, to some extent at least, neither could accomplish in isolated exertion." *Id.*, at 1160 of 66 S.Ct.

The essence of plaintiffs' argument appears to be that the Railroad Commission cannot duly consider issues of public convenience and necessity relating to interstate and foreign commerce because of the conflict of administrative procedures in the various state systems of regulation.

■ This Court finds, however, that Congress neither contemplated nor intended that there be absolute uniformity of state structure and procedure for the application of section 206(a)(6). Congress purposely delegated the function of making findings of the need for interstate service to the State Commission. The statute was designed to tie the interstate activity to the intrastate service. Uniformity of regulation was, in fact, preserved by insuring through the statute that in the unique situation of single-state carrier service, there would be consistency and homogenity in the relation between intrastate and interstate commerce privileges.

Congress was aware of the diverse state treatment of review and reconsideration of intrastate certificates of public convenience and necessity. Because of the diversity of procedures, Congress incorporated the 180-day period between the state action on the intrastate certificate and the corresponding automatic action on the interstate certificate. The purpose of the 180-day provision is to afford the operator a reasonable time to

2. 49 U.S.C. Sec. 305(a).

iron out the local problems before the interstate operation would be affected.

██ This Court finds nothing in the Constitution or any federal statute which prohibits the Railroad Commission from duly considering issues of public convenience and necessity relating to interstate and foreign commerce. It is the performance of a function which Congress has specifically delegated to the Railroad Commission by statutes, which the plaintiffs concede to be constitutional.

Plaintiffs' second contention is that an undue burden on interstate commerce would arise if interstate operations proven before the Railroad Commission under the procedure of Section 206(a)(6) of the Act be canceled, under the terms of the statute on the 180th day after the setting aside of the underlying intrastate operations by a Texas Court.

The contention ignores the fact that under Section 206(a)(6), interstate operations under a certificate of registration are regarded as *incident* to the carrier's intrastate operation and the interstate authority, even after being granted cannot exist in the absence of the corresponding intrastate authority.

In All-American Transport, Inc.—Control and Merger, 109 M.C.C. 243 (1969) the Commission stated:

"Registration authorities are granted on the basis of an underlying State certificate, and absent the State authority there is no basis for interstate authority. Congress recognized that a certificate of registration would be automatically voided if the intrastate certificate were revoked, by adopting the 180-day grace period. The statutory 180-day grace period was recognition that, but for the grace provision, a carrier would have no opportunity to reestablish its State certificate and thereby prevent the revocaction of the interstate certificate of registration. Moreover, where the intrastate right is transferred apart from the certificate of registration, the certifi-

cate would be destroyed, again because the carrier has no interstate certificate without the possession of an intrastate certificate."

To the same effect is Daniels v. United States, 210 F.Supp. 942 (D.Mont. 1962, aff'd., 372 U.S. 704, 83 S.Ct. 1018, 10 L.Ed.2d 124 (1963). The District Court stated:

"Under section 206(a)(1) both prior to amendment and after amendment, *intrastate* rights and an *intrastate* certificate form the basis of acquisition of interstate rights within the state. No grant of interstate rights is contemplated to a carrier who has no corresponding intrastate rights." *Id.,* at 951 of 210 F.Supp.

Under the provision of Section 206(a)(6) the entire procedure by which a certificate authorizing operations in interstate commerce or foreign commerce is issued or the certificate is terminated is by operation of the federal statute itself. The Railroad Commission does not have the power to issue a certificate, but only to make a finding of need which is subject to review by the Interstate Commerce Commission after the filing of an appropriate application and only the Commission can issue a certificate of registration authorizing the applicant to perform interstate service. Under the provisions of the statute, the Commission reviews the proceedings before the Railroad Commission and, without regard to the findings of the state commission, may deny any recommendation for interstate motor carrier authority which is not based upon substantial evidence demonstrating public convenience. The state commission merely performs the hearing function and determines initially the question of need for the proposed interstate service.

If the interstate service is terminated it is not the Railroad Commission or the Texas Courts which terminates the right to engage in interstate or foreign commerce. It is by operation of the federal statute itself that the right is terminated.

Before the amendment of the Act a single-state carrier could secure authority to operate in interstate or foreign commerce by simply registering its intrastate authority with the Interstate Commerce Commission. By enacting Section 206(a)(6) Congress narrowed the exemption by providing that the Interstate Commerce Commission should review the findings of the Railroad Commission and issue a certificate only if there was substantial evidence of need. By so doing it diminished the influence of the state upon the rendition of interstate service by common carrier within a single state. Obviously it was not the intention of Congress in asserting greater jurisdiction for the Interstate Commerce Commission in this area to create a procedure by which the states could burden interstate commerce.

From a consideration of the pleadings, the stipulations, exhibits, briefs and argument of counsel, it is the opinion of this Court that the action of the Interstate Commerce Commission in granting certificates of registration to Central Freight Lines and Red Arrow Freight Lines should be affirmed.